UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  **EDCV 18-925 JGB (SHKx)**　　　　　Date  June 10, 2019

Title  ***Lynn Hodge v. Image International Manufacturing, LLC, et al.***

---

Present: The Honorable　JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Jason T. Hatcher<br>Robert M. Kitson | Vartan Serge Madoyan |

**Proceedings:　Order GRANTING Plaintiff's Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 18)**

On May 13, 2019, Plaintiff Lynn Hodge filed this Motion for Preliminary Approval of Class Action Settlement. (Dkt. No. 18.) She filed a corrected Motion for Preliminary Approval of Class Action Settlement later that same day. ("Motion," Dkt. No. 20.) The Motion is unopposed. The Court held a hearing on this matter on June 10, 2019. Upon consideration of the papers filed in support of the Motion, as well as oral argument presented by the parties, the Court GRANTS the Motion.

## I.  BACKGROUND

On March 22, 2018, Plaintiff filed a Complaint against Image International Manufacturing, LLC, Marc Ronert, Janna Ronert, and Image International Sales & Marketing Corporation in the Superior Court of California, County of San Bernardino. ("Complaint," Dkt. No. 1-1.) On May 1, 2018, Defendants removed the action to federal court. (Dkt. No. 1.) On July 20, 2018, Plaintiff filed a First Amended Complaint. ("FAC," Dkt. No. 10.) The FAC alleges six causes of action: (1) failure to reimburse business expenses (Cal. Lab. Code §§ 2802, 2804, et seq.); (2) wage theft (Cal. Lab. Code §§ 218.5, 219, 221, 223); (3) failure to furnish accurate wage statements (Cal. Lab. Code § 226); (4) unfair competition (Cal. Bus. & Prof. Code § 17200, et seq.); (5) Private Attorney General Act for wage and hour violations (Cal. Lab. Code § 2698, et seq.); and (6) Private Attorney General Act for unlawful misclassification (Cal. Lab. Code § 2698, et seq.). (Id.) On March 13, 2019, the Court approved a stipulation to dismiss Defendants Marc Ronert, Janna Ronert, and Image International Sales and Marketing

Corporation. (Dkt. No. 14.) Image International Manufacturing, LLC ("Image" or "Defendant") is the sole remaining Defendant.

On May 13, 2019, Plaintiff filed this Motion. (Mot.) She attached the following documents:

- Declaration of Jason Hatcher ("Hatcher Declaration," Dkt. No. 18-1);
- Settlement Agreement ("Agreement," Dkt. No. 18-2);
- Notice of Class Action Settlement ("Notice," Dkt. No. 18-2);
- Declaration of Robert M. Kitson ("Kitson Declaration," Dkt. No. 18-3); and
- Proposed Order (Dkt. No. 18-4).

Defendant did not oppose the Motion. On June 10, 2019, the Court held a hearing.

## II. LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class. La Fleur v. Med. Mgmt. Int'l, Inc., No. EDCV 13-00398-VAP, 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted). A court may certify a class if the plaintiff demonstrates the class meets the requirements of Federal Rules of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b).[1] See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b).

Class action settlements must be approved by the court. See Fed. R. Civ. P. 23(e). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the

---

[1] All references to "Rule" in this Order refer to the Federal Rules of Civil Procedure unless otherwise noted.

proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

### III. CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS

The parties seek certification of the proposed settlement class for purposes of the Settlement Agreement. (Mot. at 6.) The proposed class includes "all current and former Business Development Representatives of Image who performed work in California, either as an employee or as an independent contractor, during the Class Period." (See Agreement ¶ 1.3.) The class period is the period from March 22, 2014 through the date of preliminary approval. (Id. ¶ 1.6.) The Court first addresses the Rule 23(a) requirements and then turns to the Rule 23(b) requirements.

**A. Requirements of Rule 23(a)**

**1. Numerosity**

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity. Id. However, 40 or more members will generally satisfy the numerosity requirement. Id. A plaintiff has the burden to establish that this requirement is satisfied. United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co., 593 F.3d 802, 806 (9th Cir. 2010). Here, the settlement class includes only 17 individuals. (Mot. at 7-8.) This proposed class is quite small.

In the Ninth Circuit, when a district court concludes a proposed class is small, it considers additional factors to determine whether joinder is impracticable. Ballas v. Anthem Blue Cross Life & Health Ins. Co., 2013 WL 12119569, at *7 (C.D. Cal. Apr. 29, 2013). These factors include "the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought." See Jordan v. Los Angeles Cty., 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds in Cty. of Los Angeles v. Jordan, 459 U.S. 810 (1982).

Courts have found the numerosity requirement is satisfied where class members were dispersed across counties, even if they resided in the same state. See Pole v. Estenson Logistics, LLC, 2016 WL 4238635, at *5 (C.D. Cal. Aug. 10, 2016) (noting class members resided in Lathrop, Tracy, Bakersfield, Fremont, Mira Loma, Ontario, Redlands, La Mirada, and Fontana). Plaintiff asserts that class members "are spread throughout the state of California and include both current and former [Business Development Representatives]." (Mot. at 8.) However, Plaintiff provides no explanation or evidence regarding where the class members currently reside or how many class members are former rather than current employees. At the hearing, Plaintiff

represented class members currently reside in the San Francisco Bay Area, in the San Diego Area, in San Bernardino County, and in Los Angeles County. Furthermore, Plaintiff represented at least one class member lives outside of California. Accordingly, this factor favors a finding that Plaintiff satisfies the numerosity requirement.

The ability of individual class members to bring suit separately can make joinder impracticable when class members lack the financial resources to file individual suits. See Pole, 2016 WL 4238635, at *5 (citing McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan and Trust, 268 F.R.D. 670, 675 (W.D. Wash. 2010)). Class members are also less able to bring separate suits when their claims are relatively small, rendering it unlikely that they might pursue relief without the class mechanism. See Millan v. Cascade Water Servs., 310 F.R.D. 593, 603 (E.D. Cal. 2015). Additionally, class members are less able to bring individual actions when they fear retaliation from an employer. See Buttino v. Federal Bureau of Investigation, 1992 WL 12013803, at *2 (C.D. Cal. Sep. 25, 1992). Here, the class consists of both current and former employees who may be discouraged from filing individual suits against Image for fear of retaliation. Furthermore, the claims appear to be relatively small, discouraging individual investment in litigation. At the hearing, Plaintiff represented approximately seven class members are still employed by Defendant. Thus, this factor favors a finding that the class is sufficiently numerous.

Finally, actions in which a plaintiff requests declaratory or injunctive relief favor a finding of numerosity because such relief necessarily implicates judicial economy, avoiding duplicative suits by other class members. See Pole, 2016 WL 4238635, at *5 (citing Escalante v. California Physicians' Serv., 309 F.R.D. 612, 618 (C.D. Cal. 2015)). Here, Plaintiff's FAC sought injunctive relief to prevent further violations of the California Labor Code. (Mot. at 8.) However, Defendant has already reclassified its independent contractors as employees. (Id.) No injunctive relief terms appear in the Agreement. Thus, it appears that Plaintiff no longer seeks injunctive relief. The Court finds this factor is neutral in its numerosity analysis.

Two of the three numerosity factors favor a finding that joinder would be impracticable. Accordingly, the Court finds Plaintiff satisfies the numerosity requirement.

### 2. Commonality

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

Here, there are questions of law and fact common to the settlement class, which include whether Defendant (1) failed to pay all earned commissions to class members; (2) failed to reimburse business expenses; (3) failed to keep adequate records and provide compliant pay stubs; (4) maintains unlawful and unfair pay practices; and (5) willfully misclassified employees as independent contractors. (Mot. at 9-10.) If Defendant is liable to one member of the class for

the allegedly violative policies, it will necessarily be liable to all. For example, if the Court finds Defendant's practice or policy unlawful, then all class members will have had a significant common question answered. The only remaining issue would then be individual determinations of damages. The Court is satisfied that Plaintiff has met the commonality requirement.

### 3. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508). Because typicality is a permissive standard, the claims of the named plaintiff need not be identical to those of the other class members. Hanlon, 150 F.3d at 1020. Here, Plaintiff argues her claims are typical of the class because they arise from the same practices, as she was a Business Development Representative who worked for Defendant during the class period. (Mot. at 10.) Accordingly, the Court is satisfied that Plaintiff has met the typicality requirement.

### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and her counsel have any conflicts of interest with any class member and whether the proposed class representative and her counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

Plaintiff maintains there is no conflict of interest between herself and the proposed settlement class, as their interests in this litigation are aligned. (Mot. at 11.) Plaintiff also represents she has litigated this case in good faith in the interest of the class. (Id.) Thus, Plaintiff does not have a conflict of interest with the class that might prevent her from vigorously representing the interests of class members who suffered the alleged violations. Finally, Plaintiff's counsel is experienced in litigating California wage and hour class actions. (See Hatcher Decl. ¶¶ 3-4; Kitson Decl. ¶¶ 7, 9.) At the June 10, 2019 hearing, Plaintiff's counsel represented class counsel has no conflicts of interest with the class. Thus, the adequacy requirement is satisfied.

## B. Requirements of Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Here, Plaintiff alleges the Agreement satisfies the requirements of Rule 23(b)(3). (Mot. at 11-13.)

Rule 23(b)(3) requires (1) issues common to the whole class to predominate over individual issues and (2) that a class action be a superior method of adjudication for the controversy. See Fed. R. Civ. P. 23(b)(3). As to predominance, the "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623). "[T]he examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'" Id. (same). A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims. Id.

Here, adjudication by representation is warranted because questions common to the settlement class represent a significant aspect of the case and can be resolved for all members of the class in a single adjudication. Specifically, Plaintiff contends that common issues predominate because she and the other class members shared similar job duties and were subject to common practice that do not depend on individual assessments for liability. (Mot. at 12.) She asserts all injuries of the class are attributable to uniform policies. (Id.) The Court is satisfied that the common questions predominate.

A class action must also be superior to other methods of adjudication for resolving the controversy. Fed. R. Civ. P. 23(b)(3). To determine superiority, a court's inquiry is guided by the following pertinent factors:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). However, "[confronted] with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." Amchem, 521 U.S. at 620.

Here, Plaintiff notes the class mechanism provides an effective mechanism for vindicating the claims of class members because small, individual claims are uneconomic, as litigation costs would exceed any potential recovery. (Mot. at 13.) Thus, individual actions are unlikely. Additionally, at the June 10, 2019 hearing, class counsel informed the Court they are unaware of other ongoing actions concerning Defendant's alleged conduct. Because the parties seek class certification only for settlement purposes, the Court ends its analysis here. Accordingly, the Court concludes the superiority requirement is satisfied.

///
///

## IV.  SETTLEMENT AGREEMENT

### A.  Settlement Class

The settlement class for purposes of this settlement includes "all current and former Business Development Representatives of Image who performed work in California, either as an employee or as an independent contractor, during the Class Period." (See Agreement ¶ 1.3.) The class period is the period from March 22, 2014 through the date of preliminary approval. (Id. ¶ 1.6.)

### B.  Financial Terms

Below is an overview of the financial terms of the Agreement:

- Gross settlement amount:                                  $325,000[2]
- Credit for direct settlement payments:                    $43,000
- Attorneys' fees:                                          $107,250
- Litigation costs:                                         $10,000
- Settlement administration costs:                          $2,750
- Service award to class representative:                    $20,000
- PAGA payment to LWDA:                                     $7,500
- Net settlement amount:                                    $134,500

The gross settlement amount is non-reversionary. (Agreement ¶ 1.18.) Any checks that remain uncashed 180 days after the date of mailing will be canceled, and the funds will be transmitted to the California State Controller's Office, Unclaimed Property Division, in the class member's name. (Id. ¶ 8.4.)

#### 1.  Settlement Class Members

Each class member shall be eligible to receive payment and will not be required to submit a claim form. (Id. ¶¶ 5.2; 5.3; 5.7.) Each class member automatically will be issued payment as long as he or she does not timely and validly request exclusion. (Id. ¶¶ 5.3, 5.7; see also Notice at 3.)

In a previous action, 16 of the 17 class members accepted a "Direct Settlement" presented by Defendant in exchange for a release of claims. (Mot. at 3; Agreement ¶ 1.11.) The total amount these class members accepted through the Direct Settlement was $43,000. (Agreement ¶ 1.11.) The Agreement provides that the $43,000 already paid in Direct Settlement

---

[2] Each individual settlement payment will be allocated 20% as wages and 80% as interest, penalties, and other non-wage payments. (Agreement ¶ 5.7; Notice at 5.) Applicable payroll taxes will be withheld from the wage portion of the settlement share. (Agreement ¶ 5.7; Notice at 4.)

will be deducted from the gross settlement amount as a credit. (Id. ¶ 1.18.) The net settlement amount payable to each class participant will be calculated and distributed across two funds.

The first fund of the settlement will distribute $127,800 across all class members who do not request exclusion. (Id. ¶ 5.3.) Each class member's share is based on her proportionate share of compensation received during the class period compared to all participating class members' compensation. The formula for the settlement payment is as follows: $127,800 x (member's compensation during class period / total invoice payments received by all class members during class period). (Id. ¶ 5.3.) The second fund of the settlement will distribute $6,700 across class members who did not accept a Direct Settlement payment. (Id. ¶ 5.4.) This share will be calculated in the same manner as the first fund. (Id.) As addressed above, 16 of the 17 class members accepted a Direct Settlement payment. (Id. ¶ 1.11.) Thus, it appears the entirety of this $6,700 will be paid to a single class member. Based on these calculations, Plaintiff estimates an average recovery of $7,517. (Mot. at 1.) This estimated recovery is in addition to any Direct Settlement some class members have already accepted. (Id.)

The Agreement presumes the Court will approve the requested attorneys' fees and class representative award. As addressed below in Part V.E, the Court is skeptical that the requested attorneys' fees are fair. The Court is even more skeptical that a $20,000 service award is fair. See infra Part V.E. The Agreement does not explain how a reduction to these requests will impact the net settlement amount calculations for individual settlement shares. The Motion fails to address this as well. The Court advises Plaintiff to discuss this issue in her motion for final approval.

### 2. Class Representative

The Agreement provides for a service award of up to $20,000 for Plaintiff Hodge. (Agreement ¶ 1.26; Notice at 5.)

### 3. California Labor and Workforce Development Agency ("LWDA") Payment

The parties allocated $10,000 as a PAGA award, of which 75% ($7,500) will be paid to the LWDA with the balance remaining in the net settlement amount for distribution to class members. (Agreement ¶ 1.22.)

### 4. Settlement Administration Costs

The settlement administrator, Phoenix Class Action Administration Solutions ("Phoenix"), will be paid from the gross settlement amount for the cost of administering the Agreement. (Agreement ¶ 1.28; Notice at 5.) The costs of settlement administration will be $2,750. (Agreement ¶ 1.27; Notice at 5.)

///
///

### 5. Attorneys' Fees and Costs

Class counsel will seek an award of attorneys' fees not to exceed $107,250 (or 33% of the gross settlement amount) and litigation costs not to exceed $10,000. (Agreement ¶¶ 1.2, 1.7, 6.1; Notice at 5.)

### C. Injunctive Relief

The Agreement does not include any injunctive relief.

### D. Release

All settlement class members who do not request exclusion agree to release their claims as follows:

> [E]ach participating Settlement Class Member, individually and on behalf of all their heirs, representatives, successors, assigns, and attorneys, hereby compromise, release, resolve, relinquish, discharge, and settle any and all claims, causes of action, debts, liabilities, demands, obligations, guarantees or damages which relate to or arise from the allegations and claims asserted in the operative Complaint on file in the Lawsuit, or that could have been asserted based on the allegations or claims asserted in the Lawsuit, against the Released Parties (as defined below), including, but not limited to, alleged violations of California Labor Code Sections 218.5, 219, 221, 223, 224, 225.5, 226, 226.3, 226.8, 256, 558 et seq., 1021.5, 1197.1, 2698 et seq. (PAGA), 2800, 2802, 2804 and applicable ICW wage orders, including claims of independent contractor misclassification, nonpayment of wages, unlawful withholding of wages due, failure to reimburse business expenses, failure to provide accurate and itemized wage statements, failure to keep accurate records, unfair or unlawful business practices (including under the California Business & Professions Code and Section 17200 et seq.), and related penalties, interests, costs, attorneys' fees, injunctive relief, or declaratory relief (the "Released Claims"). "Released Parties" means Image and each and all of its present, former and future controlling persons, parents, affiliates, subsidiaries, successors-in-interest, benefit plans sponsored by such companies, shareholders, owners, officers, directors, principals, employees, agents, attorneys, insurers, managers, trustees, fiduciaries, representatives, divisions, predecessors, successors, and assigns, including but not limited to Image International Sales & Marketing Corporation, Janna Ronert, and Marc Ronert. The Released Claims do not include any claims that cannot be released as a matter of law.

(Agreement ¶ 9.1.) Plaintiff Lynn Hodge agrees to a broader release which releases all her known and unknown claims she has or may have had against the Released Parties. (Id. ¶ 9.2.) Plaintiff expressly waives the benefits secured by California Civil Code § 1542, which states that "[a]

general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her Settlement with the debtor." (Id.) Ms. Hodge's general waiver does not release claims which cannot be waived or released as a matter of law, including workers' compensation claims. (Id.)

**E. Notice**

The Agreement proposes the following procedure to notify class members of the Agreement. (Id. ¶ 7.) Within 30 days of preliminary approval, Image will provide Phoenix the following information for each class member: name, last known address, social security or tax identification number, and the amount of compensation the member received during the class period. (Id. ¶ 7.1.) No later than 10 days after receiving this information, Phoenix will send the Notice to each class member via U.S. Mail. (Id. ¶ 7.2.) Before mailing, Phoenix will take reasonable measures to verify the last known addresses provided. (Id. ¶ 7.3.) Any mail returned as undeliverable will re-mailed within 10 days to any available forwarding address. (Id. ¶ 7.8.) If no forwarding address is available, the settlement administrator will perform a skip trace search and re-mail the Notice. (Id.) Class members who receive Notice via this second round will have an additional 15 days to object to the Agreement or request exclusion. (Id.)

The Notice includes the following: (1) information about the lawsuit; (2) a summary of the Settlement Agreement; (3) the definition of the class; (4) an explanation of the individual distribution formulas; (5) an estimate of the class member's settlement share; (6) procedures and deadlines for how to dispute the amount of compensation received during the class period, how to object, and how to request exclusion; (7) references to sources from which class members can get information about the settlement agreement; (8) contact information for class counsel and defense counsel; and (9) the date and time of a final approval hearing. (See Notice.)[3]

Any objection, request for exclusion, or dispute concerning amount of compensation during the class period must be postmarked no later than 30 days after Phoenix mails the Notice. (Agreement ¶¶ 5.5, 7.4, 7.5, 7.6; see also Notice.) The Notice informs class member of their right to object to the Settlement. (Agreement ¶ 7.4; Notice at 7.) An objection must (a) include the objector's name, address, and telephone number; (b) contain the words "Notice of Objection"; (c) describe clearly the legal and factual arguments supporting the objection; (d) list any witnesses the objector intends to call at the final approval hearing; (e) provide copies of any exhibits the objector intends to offer at the final approval hearing; and (f) reference the case name and number. (Agreement ¶ 7.4; Notice at 4.) The Notice contains instructions on where to send an objection and lists the required inclusions. (Notice at 4.)

---

[3] The Court notes that the table of contents on the first page of the Notice does not properly correspond to the location of each topic. The Court permits Plaintiff to fix the table of contents so that it will accurately reflect the page on which each topic appears.

The Notice informs class members of their right to request exclusion from the Settlement. (Settlement Agreement ¶ 7.5; Notice at 3-4.) A valid request for exclusion must (a) include the class member's name, address, telephone number, and last four digits of her social security or tax identification number; (b) include a statement that the class member wants to be excluded from the settlement; (c) be addressed to Phoenix at the provided address; and (d) contain the class member's signature. (Agreement ¶ 7.5; Notice at 3-4.) Requests for exclusion that do not include the required information will be deemed ineffective. (Agreement ¶ 7.5.) No opt-out form is included in the notice materials.

To dispute the amount of compensation received during the class period, a class member must (a) state the case name and number; (b) provide her name, address, telephone number, and the last four digits of her social security or tax identification number; (c) clearly state the dispute; and (d) sign the dispute. (Id. ¶ 5.5; Notice at 6.)

**F. Administration**

Phoenix will serve as the settlement administrator. (Agreement ¶¶ 1.28.) Settlement administration duties include: (a) finalizing the individual Notice forms; (b) mailing Notice to class members; (d) tracking returned objections, disputes, and requests for exclusion; (e) calculating individual settlement shares; (f) notifying class counsel and defense counsel of any disputes received; (g) allowing the parties to comment on the disputes; (h) preparing and mailing settlement checks and tax forms; and (i) collecting cashed settlement checks and tracking signatures. (Mot. at 6; see also Agreement ¶¶ 5.5, 7.2-7.8.) Within 5 days after the close of the notice period, Phoenix will notify the parties of the number of class members who have objected to or requested exclusion from the Agreement. (Id. ¶ 7.7.)

### V. PRELIMINARY APPROVAL OF THE SETTLEMENT

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon, 150 F.3d at 1026. To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." Stanton, 327 F.3d at 959 (internal citations omitted). The settlement may not be a product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"At the preliminary approval stage, some of the factors cannot be fully assessed. Accordingly, a full fairness analysis is unnecessary." Litty v. Merrill Lynch & Co., 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015). Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in

favor of settlement of class actions. Class Plaintiffs, 955 F.2d 1276. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

### A. Extent of Discovery and Stage of the Proceedings

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (internal quotation marks omitted).

Plaintiff asserts the Parties conducted significant informal investigation and discovery in this action. (Mot. at 2; Hatcher Decl. ¶ 12.) Much of this exchange occurred before Plaintiff filed her Complaint. (Hatcher Decl. ¶ 12.) Image informally provided documents in relation to mediation efforts. (Id.) Based on this production, Plaintiff asserts she was well-positioned to evaluate the strengths and weaknesses of her case. (Id.) On August 14, 2018, the parties participated in a full-day mediation with private mediator Steven G. Pearl. (Id. ¶¶ 11-12.) After the mediation, the parties continued negotiating a settlement. (Id. ¶ 12.)

The Court notes Plaintiff provides no description as to what type of information Image informally provided. Thus, it is unclear to the Court how rigorously Plaintiff's counsel investigated the claims. Because it is clear the parties engaged in at least some investigation of the facts and the applicable law, this factor weighs slightly in favor of granting preliminary approval of the Agreement. At the final approval stage, Plaintiff is advised to give more detail concerning what information Image informally provided .

### B. Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459.

The total settlement amount is $325,000, with an average recovery of approximately $7,517 per class member. (Agreement ¶ 1.18; Mot. at 2.) Plaintiff estimates that if she were completely successful on non-PAGA claims, the total damages would be approximately $1,954,200. (Hatcher Decl. ¶ 14.) Thus, the gross settlement amount represents approximately 16.6% of the total potential recovery. This calculation does not apply any risk adjustment to Plaintiff's claims to account for Defendant's factual and legal defenses. Most significantly, 16 of the 17 class members have previously accepted settlement payments, releasing these claims against Image. (Id.)

  Although the settlement amount represents a fraction of the maximum value of this litigation, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" In re Mego, 213 F.3d at 459 (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir.1982)).  The court in In re Mego considered the difficulties in proving the case and determined the settlement amount, which was one-sixth of the potential recovery, was fair and adequate.  Id.  Here, the class recovery is about the same percentage as in In re Mego, and Plaintiff similarly faces substantial obstacles in pursuing her claims.  See infra Part V.C.  Considering these difficulties, the Court finds the settlement amount is potentially fair.

**C.  Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation**

  Plaintiff acknowledges the risk, expense, complexity, and likely duration of litigation.  (Mot. at 18-20.)  Plaintiff summarizes Image's defenses on the merits to each of her claims.  (Id.)  These defenses appear strong.  However, Plaintiff's largest obstacle is the fact that 16 of the 17 class members released their claims by accepting settlement payments in a previous action.  (Id.; see also Hatcher Decl. ¶ 16.)  Plaintiff's counsel represents that Image's exposure is minimal as to her claims in light of these releases.  (Hatcher Decl. ¶ 16.)  The Court further notes the small class size presents a significant hurdle in maintaining class certification for trial purposes.  Additionally, it is implied that continued litigation of these issues would result in great expense.

  The risk, expense, complexity, and likely duration of further litigation weigh in favor of preliminary approval.  Without the Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long, complex, and expensive.  If the settlement is not approved, Image will likely oppose class certification and conduct further motion practice to defend against Plaintiff's claims.  Settlement of this matter will conserve the resources of this Court and the parties, thus weighing heavily in favor of preliminary approval.

**D.  Experience and Views of Counsel**

  "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted).  Class counsel has experience serving as counsel in wage-and-hour class actions.  (See Hatcher Decl. ¶¶ 3-4; Kitson Decl. ¶¶ 7, 9.)  Counsel further submits the Agreement is fair, reasonable, and a good outcome for the class.  (See Hatcher Decl. ¶ 11; Kitson Decl. ¶¶ 11-12.)  This weighs in favor of preliminary approval.

**E.  Collusion Between the Parties**

  "To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of

overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961).

As an initial matter, the Court notes that settlement negotiations were conducted at arms-length. The parties engaged in a mediation session with a mediator. (Hatcher Decl. ¶ 11.) The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive. See, e.g., Satchell v. Fed Ex. Corp., No C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). The Court thus turns to the financial terms of the Agreement.

The Agreement provides that Plaintiff Lynn Hodge may request a service award of up to $20,000. (Settlement Agreement ¶ 1.26; Notice at 5.) A court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for the time spent in litigation activities. See In re Mego Fin. Corp., 213 F.3d at 463 (finding the district court did not abuse its discretion in awarding an incentive award to the class representatives). Here, Plaintiff provides absolutely no detail concerning her involvement in this litigation. Furthermore, the maximum amount for which Plaintiff may move is substantial. The Court is quite unlikely to approve such a request at the final approval stage. However, the Agreement only provides that $20,000 is the maximum amount Plaintiff may seek. She may move for an amount less than this maximum. Thus, the Court finds Plaintiff's request for an enhancement award potentially reasonable. See Clesceri v. Beach City Investigations & Protective Servs., Inc., No. CV-10-3873-JST RZX, 2011 WL 320998, at *2, 9, 12 (C.D. Cal. Jan. 27, 2011) (preliminarily approving an incentive award of $3,000 each to the two named plaintiffs when the gross settlement amount was $100,000); Vanwagoner v. Siemens Indus., Inc., No. 2:13-CV-01303-KJM, 2014 WL 1922731, at *2 (E.D. Cal. May 14, 2014) (preliminarily approving $5,000 as an incentive award when the maximum settlement amount was $225,000). For final approval, the Court advises Plaintiff to provide robust detail of her involvement in the action and an estimate of the time she spent pursuing her claims. The Court further notes it does not typically award more than $10,000 to class representatives.

Plaintiff's counsel seeks up to $107,250 (or 33%) in attorneys' fees and up to $10,000 in costs. (Agreement ¶¶ 1.2, 1.7, 6.1; Notice at 5.) Generally, courts find that a benchmark of 25% of the common fund is a reasonable fee award. Hanlon, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); Paul, Johnson, Alston & Hunt v. Graulty, 866 F.3d 258, 272 (9th Cir. 1989) (the 25% benchmark can be adjusted in either direction "to account for any unusual circumstances[,]" but the justification for adjustment must be apparent); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)) ("In applying this method, courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record.").

The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable

Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002).  The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995).  The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  Next, the Court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation.  See Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).[4]

Here, Plaintiff seeks 33% (or $107,250) in attorneys' fees and $10,000 in costs.  (Agreement ¶¶ 1.2, 1.7, 6.1; Notice at 5.)  Plaintiff does not offer a lodestar calculation.  Although this award is potentially fair, without justifying documentation, the Court may need to adjust the award to bring it in line with the Ninth Circuit benchmark at the final approval stage.

**F.  Remaining Factors**

In addition to the factors discussed above, the Court may consider the risk of maintaining class action status throughout the trial, the presence of a governmental participant, and the reaction of the class members to the proposed settlement.  Staton, 327 F.3d at 959 (internal citations omitted).  At this stage, the Court cannot fully analyze the remaining factors.  For example, there is no governmental participant in this action.  Additionally, the settlement class members have yet to receive notice of the Settlement Agreement, nor have had time to comment or object, preventing consideration of their reaction.

Of the factors considered, all weigh in favor of preliminary approval of the Settlement Agreement.  Thus, the Court GRANTS preliminary approval of the proposed Settlement Agreement.

## VI.  NOTICE TO THE CLASS

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be

---

[4] In Kerr, the Ninth Circuit adopted the 12-factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) which identified the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  Kerr, 526 F.2d at 70.

identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the settlement agreement.  Fed. R. Civ. P. 23(e)(1).  Notice must be "timely, accurate, and informative."  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989); Churchill Village, LLC v. Gen. Elec., 361 F.3d 566 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'").

The Agreement provides for direct mail notice to class members.  (Agreement ¶ 7.2.)  The Notice includes the following: (1) information about the lawsuit; (2) a summary of the Settlement Agreement; (3) the definition of the class; (4) an explanation of the individual distribution formulas; (5) an estimate of the class member's settlement share; (6) procedures and deadlines for how to dispute the amount of compensation received during the class period, how to object, and how to request exclusion; (7) references to sources from which class members can get information about the settlement agreement; (8) contact information for class counsel and defense counsel; and (9) the date and time of a final approval hearing.  (See Notice.)  Since "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort," Eisen v. Carlisle and Jaquelin, 417 U.S.156, 173 (1974), the Court agrees that direct mail notice is satisfactory.  The hearing for Plaintiff's Motion for Final Approval of the Class Action Settlement will take place on Monday October 7, 2019.

## VII.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Preliminary Approval.  The Court ORDERS as follows:

1. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate for members of the Settlement Class.

2. The following Settlement Class is certified for settlement purposes only: all current and former Business Development Representatives of Image who performed work in California, either as an employee or as an independent contractor, during the Class Period.

3. The Court appoints The Myers Law Group, A.P.C., David P. Myers, Robert M. Kitson, and Jason Hatcher as counsel on behalf of the Settlement Class for purposes of settlement only.

4. The Court appoints Plaintiff Lynn Hodge as the representative of the Settlement Class for purposes of settlement only.

5. The Court appoints Phoenix Class Action Administration Solutions as the settlement administrator.

6. The Notice of Class Action Settlement is approved. Plaintiff may alter the Notice solely to ensure that the table of contents correctly corresponds to the page on which each topic appears.

7. The Court authorizes mailing of Notice to the settlement class members by First Class U.S. Mail pursuant to the Agreement.

8. The hearing date for the Final Approval Hearing is hereby set for Monday October 7, 2019 at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.

**IT IS SO ORDERED.**