David P. Myers (SBN 206137)
*dmyers@myerslawgroup.com*
Robert M. Kitson (SBN 214091)
*rkitson@myerslawgroup.com*
Jason Hatcher (SBN 285481)
*jhatcher@myerslawgroup.com*
**THE MYERS LAW GROUP, A.P.C.**
9327 Fairway View Place, Suite 100
Rancho Cucamonga, CA 91730
Telephone: (909) 919-2027
Facsimile: (888) 375-2102

Attorneys for Plaintiff LYNN HODGE and
all others similarly situated.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN HODGE, an individual,<br><br>       Plaintiff,<br><br>  v.<br><br>IMAGE INTERNATIONAL MANUFACTURING, LLC, a Florida Limited Liability Company; MARC RONERT, an individual; JANNA RONERT, an individual; IMAGE INTERNATIONAL SALES & MARKETING CORPORATION, a Delaware Corporation; and DOES 1 through 100, inclusive<br><br>       Defendants. | Case No. 5:18-cv-00925-JGB-SHK<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:   October 7, 2019**<br>**Time:  9:00 a.m.**<br>**Courtroom 1** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

YOU ARE HEREBY NOTIFIED THAT on October 7, 2019, at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 1 of the United States District Court, Central District located at 3470 Twelfth Street, Riverside, CA 92501-3801, Honorable Judge Jesus M. Bernal presiding, Plaintiff Lynn Hodge ("Plaintiff") as an individual and on behalf of all others similarly situated will and hereby does move this Court for entry of Order Granting Final Approval of Class Action Settlement. Good cause exists for the granting of the Motion in that the proposed settlement is fair, reasonable, and adequate.

The Motion will be based on this Notice of Motion, the Declarations of Plaintiff's counsel, the Declaration of the Class Representative, Declaration from the Settlement Administrator, the Memorandum of Points and Authorities set forth below, and on such oral and documentary evidence as may be presented at the hearing of the Motion.

DATED: September 9, 2019                    Respectfully Submitted,
                                            **THE MYERS LAW GROUP, A.P.C.**


                            By:   /s/ Robert M. Kitson
                                    David P. Myers, Esq.
                                    Robert M. Kitson, Esq.
                                    Jason Hatcher, Esq.
                                    Attorneys for Plaintiff, on behalf of
                                    herself and all others similarly
                                    situated

2

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    SUMMARY OF LITIGATION ............................................................ 2

III.   THE SETTLEMENT ........................................................................... 4

   A.   THE SETTLEMENT CLASS: ............................................................. 4

   B.   BENEFITS TO THE CLASS: .............................................................. 5

   C.   PAGA PAYMENT: .......................................................................... 6

   D.   NOTICE AND SETTLEMENT ADMINISTRATION: ............................... 6

   E.   ATTORNEY FEES AND COSTS: ........................................................ 7

   F.   CLASS REPRESENTATIVE ENHANCEMENT: ..................................... 7

IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT 8

   A.   RULE 23(A) AND (B) REQUIREMENTS SATISFIED ............................. 9

   B.   RULE 23(C) AND (E) NOTICE REQUIREMENTS SATISFIED ................. 9

   C.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE .............. 10

   D.   RULE 23(E) REQUIREMENTS SATISFIED ........................................ 11

      1.   Strength of Plaintiff's Case .................................................... 12

      2.   Risks, Expense, Complexity, And Likely Duration Of Further Litigation .......... 13

      3.   The Risks of Maintaining Class Action Status Throughout Trial ..................... 14

      4.   The Amount Offered in The Settlement .................................... 15

      5.   Sufficient Discovery and Investigation Has Been Completed To Warrant Settlement ........................................................................... 18

      6.   The Experience and Views of Counsel ..................................... 19

      7.   Presence of Governmental Participant .................................... 20

      8.   Reaction of the Class .............................................................. 20

      9.   Arm's Length Negotiations ...................................................... 20

V.     PAGA SETTLEMENT ....................................................................... 21

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

VI.   CONCLUSION.................................................................................... 23

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

**TABLE OF AUTHORITIES**

2

3

**CASES**

Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d 964 (E.D. Cal. 2012).........................8, 9

Aguilar v. Zep Inc.,

 2014 U.S.Dist.LEXIS 65166, *12 (N.D.Cal. May 12, 2014).......................12, 13, 16, 17

Byrd v. Civil Serv. Comm 'n.,

 459 U.S. 1217 (1983)..................................................................................................10

Chindarah v. Pick Up Stix, Inc.,

 171 Cal.App.4th 796 (2009) .....................................................................................12

Churchill Village, LLC v. Gen. Elec.,

 361 F.3d 566 (9th Cir. 2004) ....................................................................................10

Class Plaintiffs v. Seattle,

 955 F.2d 1268 (9th Cir. 1992) ...............................................................................8, 20

Corona v. Remington Lodging & Hospitality, LLC,

 2019 U.S.Dist.LEXIS 68116, *27 (C.D.Cal. Apr. 22, 2019, No. EDCV 17-1371 JGB

 (SPx).............................................................................................................passim

Dynamex Operations W. v. Superior Court

 (2018) 4 Cal.5th 903 ..................................................................................................22

Ellis v. Naval Air Rework Facility,

 87 F.R.D. 15 (N.D. Cal. 1980)...................................................................................20

Garcia v. Border Transportation Group, LLC

 (2018) 28 Cal.App.5th 558 .......................................................................................22

Hanlon v. Chrysler Corp.,

 150 F.3d 1011 (9th Cir. 1998) ...................................................................................10

Harris v. Vector Mktg. Corp.,

 2012 U.S. Dist. LEXIS 13797, 2012 WL 381202 *3 (N.D. Cal. Feb. 6, 2012)..............9

*///*

In re Heritage Bond Litig.,

2005 U.S. Dist. LEXIS 13555, *32 (C.D. Cal. June 10, 2005); ................................. 20

In re Pac. Enters. Sec. Litig.,

47 F.3d 373 (9th Cir. 1995) ..................................................................... 19

In re Portal Software, Inc. Securities Litig.,

Case No. C-03-5138 VRW, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007)........... 14

Linney v. Cellular Alaska P'ship,

151 F.3d 1234 (9th Cir. 1998) ............................................................... 12

Marino v. CACafe, Inc.,

2017 U.S.Dist.LEXIS 64947, *6 (N.D. Cal. 2017) ......................................... 13

Mejia v. Farmland Mut. Ins. Co.

(E.D.Cal. June 25, 2018) 2018 U.S.Dist.LEXIS 106856, at *13 ................................. 17

National Rural Tele. Coop. v. DIRECTTV, Inc.,

221 F.R.D. 523 (C.D. Cal. 2004).................................................... 14, 19

O'Connor v. Uber Techs., Inc.,

2016 U.S. Dist. LEXIS 11028, *10 ............................................................ 21

Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco,

688 F.2d 615 (9th Cir. 1982) ............................................................. 10,11

Ontiveros v. Zamora,

303 F.R.D. 356 (E.D. Cal. 2014) ................................................................ 8

Rodriguez v. W. Publ'g Corp.,

563 F.3d 948 (9th Cir. 2009) ............................................................. 12

S. G. Borello & Sons, Inc. v. Department of Industrial Relations

(1989) 48 Cal.3d 341 ........................................................... 22

See Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 2013 WL 3340939, 12

(E.D. Cal. 2013) ...................................................... 13

Staton v. Boeing Co.,

327 F .3d 938 (9th Cir. 2003) .................................................... 10

Syed v. M-I, L.L.C.,

  2017 U.S.Dist.LEXIS 118064, *26 (E.D. Cal. July 26, 2017) ........................................ 8

Telecomm. Corp. v. DirectTV

  (C.D. Cal. 2004) 221 F.R.D. 523 ............................................................................... 11, 15

Torrisi v. Tucson Elec. Power Co.,

  8 F.3d 1370 (9th Cir. 1993) ............................................................................................ 12

Weinstein v. Mortgage Contr. Servs., LLC,

  2018 U.S.Dist.LEXIS 182718, *27 (C.D.Cal. Oct. 23, 2018, No. EDCV 14-02521 JGB

  (SPx)) ..................................................................................................................... 8, 9, 15

York v. Starbucks Corp.

  (C.D.Cal. Dec. 3, 2009) 2009 U.S.Dist.LEXIS 131489, at *21-25 ................................ 17

**STATUTES**

Cal. Bus. & Prof Code §§17200 ...................................................................................... 2

Cal. Civil Code §1542 ..................................................................................................... 4

Cal. Labor Code § 2698 .................................................................................................. 2

Cal. Labor Code § 2699 ................................................................................................ 21

Cal. Labor Code §226.8 ................................................................................................ 22

Cal. Labor Code §2802 ................................................................................................. 16

Cal. Labor Code §226 ................................................................................................... 17

Fed. R. Civ. P. 23 ..................................................................................................... 9, 11

**OTHER AUTHORITIES**

4 Newberg on Class Actions § 11:50 ........................................................................ 12, 20

Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004), § 21.63 ..................... 9

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I.    INTRODUCTION

Plaintiff Lynn Hodge ("Plaintiff" or "Class Representative") has achieved an excellent result in this litigation, embodied in the Stipulation of Settlement and Release ("Settlement Agreement"). The proposed Settlement provides the following substantial benefits to the Class Members and is the product of aggressive and steadfast litigation by Plaintiff and Class Counsel to obtain the best possible result for the Class Members:

- An average settlement payment to Class Members of **approximately $9,342.11[1]**;

- An average increased settlement payment of **approximately $6,654.61** for the 16 Class Members who signed the Direct Release Agreement from Image;

- An average payment amount per Class Member of approximately $7,708.95, after the credit for the direct settlement payments related to the Direct Release Agreements Image obtained;

- The highest estimated payment to a Class Member being $18,050.95 with approximately seven (7) Class Members estimated to receive settlement shares in excess of $13,000.00. (Kruckenberg Decl., ¶¶ 11 and 3; Exh. C).

- Future relief as Image converted the Class Members from independent contractors to employees; and

- Future relieve as Image modified its business expense reimbursement policies and practice to cover all reasonable business expenses incurred in marketing and selling Images products in California by the Class Members.

---

[1] This includes the $43,000 paid to 16 of the 19 Class Members who accepted direct settlement payments from Defendant Image International Manufacturing, LLC ("Defendant" or "Image") in exchange for a Release Agreement that expressly released the claims alleged in the matter of *Lynn Hodge v. Image International Manufacturing, LLC, et al.*, Case No.: 5:18-cv-00925 ("Direct Release Agreement"). These Direct Release Agreements, that were obtained by Defendant from 94% of the then putative class, were obtained in the couple week preceding the August 14, 2018 mediation in this case. At that time there were only 17 Class Members, which included Plaintiff.

1

The Class Members have shown their approval of the Settlement Agreement as **100%** of the Class Members are participating in the settlement and there are **no objections** lodged by the Class Members against the Settlement Agreement after being provided adequate notice of the terms of the Settlement Agreement.

This motion seeks the Court's final approval of the settlement of a wage and hour class action and representative action under California's Private Attorneys General Act – Cal. Labor Code § 2698 *et seq.* ("PAGA"), filed by Plaintiff Lynn Hodge ("Plaintiff" or "Class Representative") and Defendant Image International Manufacturing, LLC ("Defendant" or "Image"). On June 10, 2019, the Court granted preliminary approval of the parties' proposed class action settlement. Under the non-reversionary settlement, Defendant has agreed to pay a maximum of Three Hundred Twenty-Five Thousand Dollars ($325,000.00) for a total of 19 Class Members.

The Court should grant final approval of the settlement as the Settlement Agreement is fair, reasonable, and adequate.

## II.    SUMMARY OF LITIGATION

On or about March 22, 2018, named Plaintiff filed a class action ("the Lawsuit") in the Superior Court for the County of San Bernardino, entitled <u>Lynn Hodge v. Image International Manufacturing, LLC</u>. The Lawsuit alleged various wage and hour claims, pursuant to the California Labor Code, that Image failed to reimburse all reasonable business expenses, engaged in wage theft related to commissions and bonuses, failed to furnish accurate wage statements, as well as derivative claims under Cal. <u>Bus. & Prof</u> Code §§17200, *et seq.*.

On or about May 1, 2018, Defendant removed the Lawsuit to the United States District Court for the Central District of California.  Shortly thereafter the parties discussed early precertification mediation and scheduled an August 14, 2018 mediation with Steven Pearl, Esq..

On or about July 3, 2018, the parties filed a Joint Stipulation for Leave for Plaintiff to File a First Amended Complaint and Stay Scheduling Conference Pending Mediation.

(Dkt. No. 8).

On or about July 9, 2018, this Court Ordered leave for Plaintiff to file the First Amended Complaint and stayed the July 16, 2018 Scheduling Conference pending the parties' August 14, 2018 mediation.

On or about July 20, 2018, Plaintiff filed the First Amended Complaint ("FAC") adding a derivative PAGA claim as well as a PAGA claim alleging unlawful misclassification as independent contractors. (Dkt. No. 10).

On or about August 1, 2018, Image provided letters and Employment Agreements to the putative class members who were misclassified as "independent contractors."

On or about August 2, 2018, Image began to secure Direct Release Agreements from the putative class members in exchange for direct settlement payments. Image paid approximately $43,000 to the putative class members and obtained Direct Release Agreement from 16 of the then 17 putative class members in this case.

On August 14, 2018, the parties participated in private mediation with private mediator Steven G. Pearl, Esq. The mediation lasted from approximately 10:00 a.m. to 9:30 p.m. and was highly adversarial. The case did not resolve at mediation.

Despite the Direct Release Agreements obtained by Defendant from the putative class members, Plaintiff and Class Counsel continued to pursue class litigation and class settlement in this case.

The Parties ultimately finalized this settlement on March 7, 2019, which provided significant more relief to the Class Members. It is based on the substantial efforts, investigation, and collaboration of Plaintiff and Class Counsel that the instant settlement was reached. At all times, the Parties' settlement negotiations have been non-collusive, adversarial, and at arm's length.

On or about June 10, 2019, this Court granted Preliminary Approval of the Settlement Agreement. (Dkt. Nos. 23 and 24).

On or about July 22, 2019, the approved Claims Administrator, Phoenix Settlement Administrators ("PSA"), provided Notice to the Class Members. (Kruckenberg Decl. ¶5,

Exh. A).  The Notice to the Class Members outlines the following settlement terms:

- Maximum Settlement Consideration ("MSC"):  $325,000.00
- Class Service Payment to Plaintiff:  $20,000.00
- Administrative Costs to PSA estimated at:  $2,750.00
- Class Counsel Fees (33% of MSC):  $107,250.00
- Class Counsel Litigation Expenses up to:  $10,000.00[2]
- PAGA Payment to the LWDA:  $7,500.00

The Notice further provides that of the $177,500 allocated to the Class Members for distribution, Image is entitled to a $43,000.00 credit for the payments to Class Members as part of the Direct Release Agreements obtained by Image. (Kruckenberg Decl. Exh. A). Further that the remaining $134,500.00 to be paid to the Class Members will be split into two separate funds. (Id.).  One fund of the Settlement Payment, which consists of $127,800.00 will be distributed to all Class Members. (Id.).  The other fund of the Settlement Payment, which consists of $6,700, will be distributed to all Class Members who did not accept a payment associated with the Direct Release Agreement. (Id.).

The Notice also provides that Class Members are releasing all California Labor Code claims related to the claims asserted in the FAC. (Kruckenberg Decl., Exh. A). Plaintiff, alone, is additionally releasing any and all claims against the released parties pursuant to Cal. Civil Code §1542. (Hatcher Decl. at ¶22, Exh. A at Sec. 9.2).

Based on Class Counsel's independent investigation and evaluation, Class Counsel believes the Settlement is fair, reasonable, and adequate and is in the best interest of the Class Members in light of all known facts and circumstances, including the risk of loss and defenses asserted by Defendant.

## III.    THE SETTLEMENT

### A.    The Settlement Class:

The proposed "Settlement Class" is comprised of "[A]ll current and former

---

[2] Plaintiff is only seeking actual expenses incurred which are less than $10,000.00.

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Business Development Representatives of Image who performed work in California, either as an employee or as an independent contractor, during the Class Period." The "Class Period" means the period from March 22, 2014 up to the Preliminary Approval Date of June 10, 2019.

**B.    Benefits to the Class:**

The average Class Member will receive a settlement payment of **approximately $9,342.11**. (Hatcher Decl. ¶15). The average Class Member who accepted a direct settlement payment related to this case, in exchange for the Direct Release Agreement that released all of the claims in this case weeks before the August 14, 2018 mediation, will receive an additional settlement payment of **approximately $6,654.61** due to Plaintiff's and Class Counsel's steadfast approach to continue litigating this case as a class action. (Hatcher Decl. ¶¶ 15 and 14).

The Settlement Administrator has estimated that the average payment amount per Class Member, after the $43,000 credit for the direct settlement payments to Class Members that was in exchange for the Direct Release Agreements, is $7,708.95, with the highest estimate payment to a Class Member being $18,050.95. (Kruckenberg decl., ¶ 11). At least seven (7) Class Members are estimated to receive direct settlement payments in excess of $13,000.00. (Kruckenberg Decl., Exh. C).

Moreover, as of August 2018, Image discontinued classifying the Class Members as independent contractors and hired the same as employees. (Hodge Decl. ¶¶10-12); (Hatcher Decl. ¶8; Exh. C). Further, Image modified its policy and practice to reimburse for all reasonable business expenses. This is a significant future benefit given the Class Members are traveling sales representatives and incur a significant amount of annual miles driven and automobile expenses in the performance of their jobs that were not reimbursed by Image. The transition to employees provided the Class Members with paid time off, ability to participate in health insurance, ability to participate in a retirement plan, and coverage under Image's business liability insurance. This change was affected by this lawsuit.

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The Settlement Payment to the Class Members is the gross amount due to the Class Members and consists of the Maximum Settlement Consideration less Service Payment to Plaintiff, the PAGA Payment, Class Counsel's Litigation Expenses, Class Counsel's Attorney's Fees and Settlement Administration Costs. (Hatcher Decl., Exh. A at Sec. 1.30).  Because this is a non-reversionary settlement, any amounts awarded that are less than provided for in the Settlement Agreement for the Service Payment to Plaintiff, the PAGA Payment, Class Counsel's Litigation Expenses, Class Counsel's Attorney's Fees and/or Settlement Administration Costs are added to the Settlement Payment used to make the distributions to the Class Members. (Hatcher Decl., Exh. A at Secs. 1.18 and 1.30).

**C.    PAGA Payment:**

The settlement provides an allocation of $10,000 of the Gross Settlement Amount for the PAGA claims – 75% of which shall be paid to the LWDA ($7,500) and 25% of which shall be part of the Net Settlement Amount that is distributed to Settlement Class Members ($2,500). (Hatcher Decl. ¶22, Exh. A at Sec. 1.22); (Kruckenberg Decl. ¶12, Exh. B).

**D.    Notice and Settlement Administration:**

As part of this Court's Order granting preliminary approval of the settlement, the Court approved PSA to be the Settlement Administrator and issued directives as to how notice was to be provided to the Settlement Class.

In compliance with those directives, PSA received data from Defendant on July 10, 2019, containing Class Member names, last known mailing addresses, Social Security numbers, whether or not a Class Member cashed a prior release payment, and total compensation for each Class Member during the Class Period. (Kruckenberg Decl., ¶3). The final class list contained 19 Class Members. (Id.).  After receiving the class list, the Settlement Administrator caused a National Change of Address (NCOA) search to be performed to update the class list of addresses as accurately as possible. (Id. at ¶4).[3]

---

[3] A NCOA contains changes of addresses filed with the U.S. Postal Service.

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

On July 22, 2019, PSA mailed the Notice Packet via U.S. first class mail, in English, to all nineteen (19) Class Members on the Class List. (Id. at ¶5). The Notice Packet conformed to the Court's June 10, 2019 Order. (Id., Exh. A). From July 22, 2019, through the date of execution of the Kruckenberg Declaration submitted in support of this motion, only one (1) Notice Packet was returned to PSA. (Kruckenberg Decl., ¶ 6). For this Notice Packet, PSA performed an advanced address search (i.e. skip trace) using TransUnion TLOxp, a reputable research tool. (Id.). An updated address was obtained, and the Notice Packet was promptly re-mailed to the Class Member via first class mail. (Id.). Ultimately, no Notice Packets were undeliverable. (Kruckenberg Decl. at ¶¶5-6).

### E.    Attorney Fees and Costs:

Plaintiff is seeking Attorneys' Fees of $107,250 (33% of the total settlement) and reimbursement of actual costs of $6,887.76.[4] Corona v. Remington Lodging & Hospitality, LLC, 2019 U.S.Dist.LEXIS 68116, at *27 (C.D.Cal. Apr. 22, 2019, No. EDCV 17-1371 JGB (SPx)) (This Court approved a 33.33% attorney's fee award on a $180,000 common fund based on results achieved and risk of litigation that included an average settlement share of approximately $1,053.34 per class member and when the settlement class notice stated class counsel would seek 33.33% in fees and no class member objected or requested exclusion). The reimbursement of costs associated with the administration of this matter is $2,750.00. (Kruckenberg ¶12, Exh. B).

### F.    Class Representative Enhancement:

Plaintiff is seeking a Class Representative Enhancement of $20,000 which is consistent with approved incentive payments given the average recovery of class members in this case, Plaintiff's efforts in this case, the risk to Plaintiff in bringing and continuing to pursue this case a class action, the notoriety and personal difficulties encountered by

---

[4] The basis for the attorney fee request and cost reimbursement are provided in the concurrently filed Motion for Attorney Fees and Costs; Request for Class Representative Incentive Award.

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff in pursuing this case as a class action, and the Plaintiff's exposure. (Hodge Decl. ¶¶4-32); (Hatcher Decl. ¶¶14-19)[5]; Syed v. M-I, L.L.C., 2017 U.S.Dist.LEXIS 118064, at *26-27 (E.D. Cal. July 26, 2017) (awarding $20,000 enhancement when average class member payment of $11,016.07); Ontiveros v. Zamora, 303 F.R.D. 356, 366 (E.D. Cal. 2014) (approving $15,000 incentive payments for average recovery of $3,700); Weinstein v. Mortgage Contr. Servs., LLC, 2018 U.S.Dist.LEXIS 182718, at *27 (C.D.Cal. Oct. 23, 2018, No. EDCV 14-02521 JGB (SPx)) (providing a $15,000 incentive when the average individual recovery was between $1,559.75 and $2,105.66).

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

"There is A strong judicial policy favors settlement of class actions." Corona, supra, 2019 U.S.Dist.LEXIS 68116, at *14-15; citing Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  "In order to approve the class action settlement herein, the Court must conduct a threestep inquiry." Id.; citing Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d 964, 972 (E.D. Cal. 2012).

Judicial proceedings under Federal Rule of Civil Procedure 23 follow a defined three-step procedure for approval of class action settlements:

1) Certification of a settlement class and preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2) Dissemination of notice of the proposed settlement to the affected Class Members; and

3) A formal fairness hearing, or final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

---

[5] The basis for the request for class representative enhancement is provided in the concurrently filed Motion for Attorney Fees and Costs; Request for Class Representative Incentive Award.

(See Manual for Complex Litigation, Fourth (Fed. Jud. Center 2004), § 21.63, *et seq*.).

### A.    Rule 23(a) and (b) Requirements Satisfied

In its Preliminary Approval Order, the Court certified the Class in this matter under Rules 23(a) and 23(b)(3). (Dkt. No. 23, Preliminary Approval Order at 3-6). The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Corona, *supra*, 2019 U.S.Dist.LEXIS 68116, at *17-18; Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Mktg. Corp., 2012 U.S. Dist. LEXIS 13797, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); Weinstein, *supra*, 2018 U.S.Dist.LEXIS 182718, at *15.  Here, the Class has not substantially changed since it was conditionally certified on June 10, 2019.  The class size increased from 17 to 19 between the filing of the Motion for Preliminary Approval and the Order granting preliminary approval.  Accordingly, the Rule 23(a) and (b) requirements remain satisfied.

### B.    Rule 23(c) and (e) Notice Requirements Satisfied

"Rule 23(c)(2)(B) requires the Court 'direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" Corona, *supra*, 2019 U.S.Dist.LEXIS 68116, at *18; citing Fed. R. Civ. P. 23(c)(2)(B).  "Similarly, Rule 23(e)(1) requires a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement." Id.; citing Fed. R. Civ. P. 23(e)(1).  In this Court's Preliminary Approval Order, the Court approved the notice sent to the class members by PSA. (Dkt. No. 24). The claims administrator timely mailed the Notice Packet. (Kruckenberg Decl. ¶5).

Thus, notice to the Class was adequate. By this motion, Plaintiff requests that the Court take the third and final step in the settlement approval process by granting final

approval of the proposed settlement.

## C.    The Settlement is Fair, Reasonable and Adequate

The law favors the compromise and settlement of class action suits. See, e.g., <u>Byrd v. Civil Serv. Comm'n.</u>, 459 U.S. 1217 (1983); <u>Churchill Village, LLC v. Gen. Elec.</u>, 361 F.3d 566, 576 (9th Cir. 2004); <u>Officers for Justice, supra</u>, 688 F.2d at 625 ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."). In weighing final approval of a class settlement, the court's role is to determine whether the settlement, taken as a whole, is fair, adequate, and reasonable. <u>Staton v. Boeing Co.</u>, 327 F .3d 938, 952 (9th Cir. 2003) (citing <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Plaintiff estimated, for mediation, that Defendant's potential exposure if the Class prevailed on everything was approximately $1,954,200 not including PAGA civil penalties. (See Hatcher Decl. at ¶11).

At mediation, this estimation had to be drastically reduced given Defendant obtained Direct Release Agreements for 16 of the then 17 Class Members in this case. The Direct Release Agreement from Defendant specifically identifies the matter of *Lynn Hodge v. Image International Manufacturing, LLC, et al,* Case No. CIVDS 1806854, which was later removed to federal court and assigned Case No. 5: 18-cv-00925 in the United States District Court, Central District of California (the "Hodge Action"). The Direct Release Agreement (i) releases the claims alleged in this Lawsuit and (ii) contains an acknowledgement that the Class Member was releasing the claims in this Lawsuit.

Approximately $43,000 was paid to these 16 Class Members in exchange for the Direct Release Agreements which were obtained in the weeks preceding the August 14, 2019 mediation. Despite these Direct Release Agreements, Plaintiff and Class Counsel continued to litigate this case to obtain this Settlement and a significantly increased monetary benefit to the Class Members.

District Courts in the Ninth Circuit have observed that "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery."

*Telecomm. Corp. v. DirectTV* (C.D. Cal. 2004) 221 F.R.D. 523, 527. The settlement here of $325,000 is significantly more than a "fraction" when considered that it provides a definite and significant recovery in light of the risks of further litigation—Defendant's Direct Release Agreements. The proposed settlement is reasonable in light of the strengths of Plaintiff's case, the risks of further litigation, the risks of class certification, the risks of prevailing at trial and the estimated values of the claims at trial, and Defendant's affirmative defense that Class Members have waived their claims in this case.

### D. Rule 23(e) Requirements Satisfied

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Corona, supra, 2019 U.S.Dist.LEXIS 68116, at *18-19; citing Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Id.; Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). "The Court's inquiry is procedural in nature." Id.; citing Officers for Justice, supra, 688 F.2d at 624. "Pursuant to Rule 23(e)(2), '[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.'" Id.; citing Fed. R. Civ. P. 23(e)(2).

"In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

    1) the strength of the plaintiff's case;

    2) the risk, expense, complexity, and likely duration of further litigation;

    3) the risk of maintaining class action status throughout the trial;

    4) the amount offered in settlement;

    5) the extent of discovery completed, and the stage of the proceedings;

    6) the experience and views of counsel;

    7) the presence of a governmental participant; and

    8) any opposition by class members."

Id.; citing Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). "This list of factors is not exclusive, and a court may balance and weigh different factors depending on the circumstances of each case." Id.; citing Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. Strength of Plaintiff's Case

The proposed settlement appropriately balances the costs, risks, and likely delay of further litigation, on the one hand, against the benefits provided, on the other hand. See 4 *Newberg on Class Actions* § 11:50 at 155 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

This initial fairness factor addresses Plaintiff's likelihood of success on the merits. Corona, supra, 2019 U.S.Dist.LEXIS 68116, at *19-20; citing Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964-65 (9th Cir. 2009). "In determining the probability of Plaintiff's success on the merits, there is no 'particular formula by which that outcome must be tested.'" Id.; citing Rodriguez, supra, at 965.

In this case, Plaintiff and the Class face significant risks if the litigation were to continue. Most significantly here is that 16 of the 19 class members signed Direct Release Agreements in the weeks leading up to the August 14, 2019 mediation in exchange for direct settlement payments. (Hatcher Decl. ¶11).  Given the rulings in Aguilar v. Zep Inc., 2014 U.S.Dist.LEXIS 65166, at *12 and *15-21 (N.D.Cal. May 12, 2014) and Chindarah v. Pick Up Stix, Inc., 171 Cal.App.4th 796, 803 (2009), the Direct Release Agreements posed a significant affirmative defense for Image.  Undoubtedly, the Direct Release Agreements would be used to oppose a class certification motion.  Undoubtedly, upon class certification, Image could use the releases to file a motion for summary adjudication against the Class Members who signed the releases.  This posed a significant risk to the success of this Lawsuit as if Plaintiff was unsuccessful in seeking to invalidate the Direct Release Agreements, Image would be able to obtain summary adjudication against 16 of the 19 Class Members.  Which would then render the same subject to a

motion for decertification.

The Direct Release Agreements were a significant consideration in mediation, negotiations, and the Settlement Agreement. (Hatcher Decl. ¶¶ 11 and 12).  Given the challenges Plaintiff faces in continued litigation over such issues, this factor weighs in favor of approval. See Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 2013 WL 3340939, at *12 (E.D. Cal. 2013) ("Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount.").

As shown supra, this factor weighs in favor of approval as the likelihood of success on the class claims was taken into consideration and properly accounted for in the settlement amount given Defendant's obtainment of Direct Release Agreements from 16 of the 19 Class Members. Corona, supra, 2019 U.S.Dist.LEXIS 68116, at *19-20.

## 2. <u>Risks, Expense, Complexity, And Likely Duration Of Further Litigation</u>

This factor also weighs in favor of final approval based on the aforementioned Direct Release Agreements and settlement payments.  The significant risk in this case is that post class certification order, Image would seek summary adjudication against 16 of the 19 class members who signed Direct Release Agreements in this case, and potentially succeed on the same. See Aguilar, supra, 2014 U.S.Dist.LEXIS 65166, at *21 (summary judgment granted based on prior release of Labor Code §2802 claims).  Although some Courts have invalidated putative class member release agreements, the risk is that Defendant's conduct here was sufficient in obtaining the Direct Release Agreements that the same should not be invalidated. See Marino v. CACafe, Inc., 2017 U.S.Dist.LEXIS 64947, at *6 and *10 (N.D. Cal. 2017) (invalidating putative class member releases when the communication from defendant did not inform putative class members that there was a lawsuit pending that concerned their legal rights).

The expense of further litigation here includes significant law and motion, that includes but is not limited to: (1) Plaintiff's Motion for Corrective Action pertaining to the Direct Settlement Agreements, (2) Plaintiff's Motion for Class Certification, (3)

Defendant's Motion for Summary Adjudication, and (4) Defendant's Motion for
Decertification.  Not to mention potential appeals regarding the same.

This settlement avoids the aforementioned risks and the accompanying expense.
See, e.g., In re Portal Software, Inc. Securities Litig., Case No. C-03-5138 VRW, 2007
WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of
proceeding to summary judgment, trial and appeal also support the settlement").

Upon further litigation, any determination as to the validity of the Direct Release
Agreements obtained by Defendant shortly before the August 14, 2018 mediation is likely
to yield an appeal given the impact of the Direct Release Agreements on the litigation for
each party.  Plaintiff considers this an excellent settlement given the risk involved as
Plaintiff's efforts to remain steadfast in negotiating a class settlement has resulted in a
significant monetary benefit to the Class Members—including an additional average
settlement payment of approximately $6,654.61 for the 16 Class Members who signed the
Direct Release Agreements.

Accordingly, this factor favors final approval.  Indeed, "[i]n most situations, unless
the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy
and expensive litigation with uncertain results." National Rural Tele. Coop. v.
DIRECTTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted).

**3.    The Risks of Maintaining Class Action Status Throughout Trial**

As detailed supra, Plaintiff's ability to maintain a certified class and prevail on her
claims was far from guaranteed.  Since 16 of the 19 Class Members signed Direct Release
Agreements, there is significant risk that the Class would be subject to decertification if
Defendant prevailed on a summary adjudication motion against these 16 Class Members
given there would be only 3 Class Members remaining.  While Plaintiff disagrees that the
releases obtained from Defendant are valid, Plaintiff recognizes there is a significant
potential risk that a class might be decertified due to a post certification summary
judgment/adjudication motion. So, while Plaintiff believes that she would have a strong
argument for certifying a litigation class, obtaining and maintaining class action status

throughout the trial is always a challenge, and is far from guaranteed in this case.

### 4.    The Amount Offered in The Settlement

Plaintiff estimates that the Defendant's realistic exposure in this case was approximately $1,954,200 not including PAGA civil penalties (*See* Decl. Hatcher ¶¶11-12). Courts in the Ninth Circuit have observed that "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery." Telecomm. Corp. v. DirectTV (C.D. Cal. 2004) 221 F.R.D. 523, 527.

The settlement here of $325,000 is significantly more than a "fraction" when considered that it provides a definite and significant recovery in light of the risks of further litigation. Moreover, the settlement her provides a significantly greater benefit to the Class Members who signed Direct Release Agreements—an additional average settlement payment of approximately $6,654.61.

Accordingly, this factor weighs in favor of approval.  Defendant vigorously defends that the releases are valid. The settlement amount in this case is 16.6% which is fair and adequate considering the challenges and uncertainties of the case. Weinstein, supra, 2018 U.S.Dist.LEXIS 182718, at *19 (This Court ruled that settlement amount of less than one-fourth of potential recovery was fair and adequate given challenges and uncertainties); Corona, supra, 2019 U.S.Dist.LEXIS 68116, at *22 (This Court ruled that settlement amount 19.5% of potential damages recovery was realistic and reasonable given the potential defenses defendant could put forward, including an argument against class certification).  Here, Defendant could potentially eliminate the claims of 16 of the 19 Class Members due to the Direct Release Agreements.

### a)    Unreimbursed Business Expenses

Plaintiff alleges that Defendant utilized an expense reimbursement policy that failed to reimburse for business expenses including but not limited to cell phone use, mileage and wear/tear of vehicles, meals and entertaining expenses, internet charges, and product demos. The effect of Image's expense reimbursement policy is that the BDMs were not reimbursed for reasonable business expenditures. Due to this Lawsuit, Image changed its

expense reimbursement policy so that the Class Members are reimbursed for all
reasonable business expenses incurred in the performance of their sales roles for Image.
Plaintiff estimated, for mediation, that the unreimbursed business expense class claim
exposed Defendant to approximately $1,620,000.00 in liability. (Hatcher Decl. ¶12).

However, this claim is subject to significant risk given the Direct Release
Agreements that were obtained by Defendant prior to mediation. (Hatcher Decl. ¶12).
Such Direct Release Agreements have been found valid against Labor Code §2802 claims
for failure to reimburse reasonable business expenses. Aguilar v. Zep Inc. (N.D.Cal. May
12, 2014) 2014 U.S.Dist.LEXIS 65166, at *12 and *15-21; Chindarah v. Pick Up Stix,
Inc., 171 Cal. App. 4th 796, 803 (2009).

### b)    Unpaid Wages Claim

Defendant paid tiered commissions and bonuses, based on sales quotas, to the Class
Members.  Plaintiff's FAC alleges Defendant utilized a "moving target" approach when it
came time to calculating and paying these commissions and bonuses that resulted in de-
designating accounts from Class Members to "house" accounts that would adjust the
quota and commission/bonus payouts.  Plaintiff estimated, for mediation, that the unpaid
wage class claim exposed Defendant to approximately $291,000.00 in liability. (Hatcher
Decl. ¶12).

Here also, this claim was subject to significant risk given the Direct Release
Agreements that were obtained by Defendant prior to mediation. (Hatcher Decl. ¶12).
Such Direct Release Agreements have been found valid against Labor Code claims for
disputed wages. Chindarah, supra, 171 Cal.App.4th at 803; See also Aguilar, supra, 2014
U.S.Dist.LEXIS 65166, at *12 and *15-21. Defendant denied liability or any wrongful
conduct related to how it calculated commissions and bonuses for the Class Members.

### c)    Wage Statement Claims

Plaintiff contended that Defendant either (1) failed to provide wage statements
and/or (2) provided wage statements listing the wrong employer "Image International
Manufacturing, Inc." instead of "Image International Manufacturing, LLC". The Class

Members who were misclassified as "independent contractors" did not receive wage statements.  The Class Members, who were direct employees, received wage statements with the incorrect employer name. Both violate Labor Code §226(a).  Plaintiff estimated, for mediation, that the wage statement class claim exposed Defendant to approximately $42,600.00 in liability. (Hatcher Decl. ¶12).

Here, again, this claim was subject to significant risk given the Direct Release Agreements that were obtained by Defendant prior to mediation. (Hatcher Decl. ¶12). Such Direct Release Agreements have been found valid against Labor Code claims. Chindarah, supra, 171 Cal.App.4th at 803; See also Aguilar, supra, 2014 U.S.Dist.LEXIS 65166, at *12 and *15-21.  Further, multiple Courts have found that the employer name was sufficient when employees could determine from the wage statement the correct name of the employer—such that identifying the employer with the "Inc." designation compared to the "LLC" designation was insufficient to give rise to statutory penalties under Labor Code 226. York v. Starbucks Corp. (C.D.Cal. Dec. 3, 2009) 2009 U.S.Dist.LEXIS 131489, at *21-25; Mejia v. Farmland Mut. Ins. Co. (E.D.Cal. June 25, 2018) 2018 U.S.Dist.LEXIS 106856, at *13.

**Significantly, there are no objections and no opt outs to this settlement.  The average Class Member will receive an averaged settlement payment of approximately $9,342.11 with the average Class Member that accepted a prior direct settlement for this case receiving an additional averaged payment of approximately $6,654.61 based on Plaintiff's and Class Counsel's efforts to continue litigating this matter as a class action.**  (Hatcher Decl., ¶15).

No less than seven class members are projected to receive a total settlement amount in excess of $13,000 not including any prior direct settlement payments. (Kruckenberg Decl., Exh. C).  Defendant has changed its policies and procedures at issue, including making all Class Members direct employees, thus affording the same the protections of the California Labor Code, instead of independent contractors. (Hatcher Decl., ¶8); (Hodge Decl. ¶¶8-14).

Thus, this factor weighs in favor of final approval as the settlement amount is fair and reasonable.

### 5.   Sufficient Discovery and Investigation Has Been Completed To Warrant Settlement

"This factor requires the Court evaluate whether 'the parties have sufficient information to make an informed decision about settlement.'" Corona,supra, 2019 U.S.Dist.LEXIS 68116, at *22; Linney, 151 F.3d at 1239. The relevant inquiry is whether "the parties have developed a clear idea of the strengths and weaknesses of their respective cases. Id. at 22-24; citing Lewis v. Starbucks Corp., No. 2:07-cv-00490-MCE, 2008 U.S. Dist. LEXIS 83192, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases."); Schaffer v. Litton Loan Servicing, LP, 2012 U.S.Dist.LEXIS 189830, at *42 (C.D.Cal. Nov. 13, 2012, No. CV 05-07673 MMM (JCx)).

Plaintiff and Class Counsel conducted a thorough investigation in this case and have diligently pursued an investigation of the Class Members' claims against Defendant, including reviewing relevant documents, applicable law and potential defenses. (Hatcher Decl. ¶¶6-9).  By the time of mediation, Plaintiff and Class Counsel were in receipt of independent contractor agreements; sales reports; bonus payments; commission reports; wage statement exemplars; Image Corporate Process and Procedures Manuals; annual documents detailing the amount of unreimbursed business expenses; Image's letter and employment agreement to convert BDMs to employees; and Image's itinerary and travel forms for the August 2018 sales meeting. (Hatcher Decl. ¶¶6-9).  Further, prior to mediation, Class Counsel was in receipt of a copy of Defendant's letter regarding the direct settlement agreement sent to Class Members in this case, a copy of the release agreement for the claims in this case associated with the direct settlement payment provided to the Class Members in this case, and a copy of the direct settlement agreement check provided to the Class Members in this case. (Hatcher Decl. ¶8; Exh. C).  Moreover,

18

Image provided Class Counsel data related to class size and employment.  (Id. at ¶6).

Through this discovery and investigation, Plaintiff was well positioned to evaluate the strengths and vulnerabilities of the claims and to engage in settlement discussions at the August 14, 2018 mediation and the direct settlement negotiations thereafter that eventually led to this settlement. (Hatcher Decl. ¶9).  At all times, the parties' settlement negotiations have been non-collusive, adversarial, and at arm's length. (Hatcher Decl. ¶5). Thus, this factor supports final approval.

"[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." Corona, supra, 2019 U.S.Dist.LEXIS 68116, at *23-24.  As shown supra, this factor favors final approval of the Settlement Agreement.

### 6.    The Experience and Views of Counsel

"In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties." Corona, supra, 2019 U.S.Dist.LEXIS 68116, at *24; citing Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 527-528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). "This reliance is predicated on the fact that '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'" Id.; In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).  In this case, Class Counsel have extensive experience litigating and settling wage and hour class action cases (Hatcher Decl., ¶¶ 3-4; Kitson Decl., ¶¶ 20-22) and, as just discussed, they have conducted an extensive investigation into the factual and legal issues raised in this action. The fact that qualified and well-informed counsel, after a thorough investigation and analysis of available documentation and data, endorse the settlement as being fair, reasonable, and adequate is significant and should weigh heavily in favor of the Court approving the settlement. The recovery for each Class Member is substantial, given

the risks inherent in litigation and the defenses asserted. This Settlement is fair, reasonable, and adequate and in the best interests of the Class (See Decl. Hatcher ¶5 and Kitson ¶¶4-5).

### 7. Presence of Governmental Participant

The only governmental participation in this matter is the payment to the Labor Workforce Development Agency (LWDA).  The LWDA received a copy of the Settlement Agreement, a copy of the Minute Order Granting Preliminary Approval of the Class Action Settlement, and Order Granting Preliminary Approval of the Class Action Settlement on or about July 22, 2019. (Hatcher Decl., ¶23; Exh. B).  To date, the LWDA has not objected to the Settlement Agreement. (Hatcher Decl., ¶24).

### 8. Reaction of the Class

The reaction of Class Members to the settlement has been 100% positive. No Class Member has requested to opt-out of the Settlement Class, meaning that the total percentage of participating Class Members is 100%. (Kruckenberg Decl., ¶¶ 8, 10).  No Class Member has submitted an objection to the settlement. (Kruckenberg Decl., ¶¶ 9, 10).

### 9. Arm's Length Negotiations

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." Class Plaintiffs v. City of Seattle, 955 F .2d 1268, 1290 (9th Cir. 1992). Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. See 4 Newberg § 11.41; In re Heritage Bond Litig., 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10, 2005); Ellis v. Naval Air Rework Facility, 87 F.R.D. 15, 18 (N.D. Cal. 1980).

The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here. (Hatcher Decl. ¶¶3-5; 16).  The proposed settlement here is the product of arm's-length negotiations between the experienced counsel and the settlement was reached following a formal

mediation with Steven G. Pearl, Esq., after a long and contentious litigation that settled as the parties were preparing for trial. (Id.).

## V.   PAGA SETTLEMENT

The settlement provides for a payment of $7,500 in civil penalties to the California Labor and Workforce and Development Agency. (Hatcher Decl. Ex. A at Sec. 1.22).  The legal basis for awarding PAGA penalties in this case has been disputed by the parties and legal uncertainties exist as to viability of some of the theories of liability.  Civil penalties carry a one (1) year statute of limitation.  For mediation, Plaintiff estimated PAGA civil penalty maximum exposure as $378,000.  Of this amount approximately $193,200 were based on the wage statement and wage theft claims. Further, $175,000 represented civil penalties for misclassification as independent contractors.

Under the circumstances of this case the proposed $10,000 civil penalty amount is fair and adequate (with $7,500 being paid to the LWDA and $2,500 to the Class Members who are the aggrieved employees).  The Court should evaluate "the PAGA settlement in light of the PAGA requirement that the award not be 'unjust, arbitrary and oppressive, or confiscatory.'" O'Connor v. Uber Techs., Inc., 2016 U.S. Dist. LEXIS 110281 at *10; citing Cal. Labor Code § 2699(e)(2).  Courts "may award a lesser amount than the maximum civil penalty specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2).

Here, The LWDA received a copy of the Settlement Agreement, a copy of the Minute Order Granting Preliminary Approval of the Class Action Settlement, and Order Granting Preliminary Approval of the Class Action Settlement on or about July 22, 2019. (Hatcher Decl., ¶23; Exh. B).  To date, the LWDA has not objected to the Settlement Agreement. (Hatcher Decl., ¶24).  The proposed $7,500 PAGA payment to the LWDA is fair and adequate given the Defendant has changed its policies and practices in California pertaining to independent contractors, in addition to the other underlying defenses outlined supra to the alleged violations of the California Labor Code.

1       Further, as to the civil penalties for willful misclassification, the same had to be

2 drastically reduced given Defendant converted all "independent contractor" BDMs to

3 direct employees in or about August 2018.  Further, Defendant contended that the alleged

4 violations of Labor Code §226.8 did not apply because Image was not "willful" in

5 classifying BDMs as independent contractors based on the S. G. Borello & Sons, Inc. v.

6 Department of Industrial Relations (1989) 48 Cal.3d 341, 350 standard. Defendant

7 contended that under the *Borello* standard the BDMs would qualify as independent

8 contractors and not employees.

9       Thus, even if Plaintiff established that BDMs were misclassified as independent

10 contractors under the ABC Test provided by Dynamex Operations W. v. Superior

11 Court (2018) 4 Cal.5th 903, that would not necessarily establish a violation of Labor Code

12 §226.8.  Further, to the degree Defendant based its classification on the *Borello* standard

13 the same would show a lack of the requisite willfulness. Further, the *Dynamex* holding

14 provides that the ABC Test applies to wage order violations and any corresponding Labor

15 Code violations. Garcia v. Border Transportation Group, LLC (2018) 28 Cal.App.5th 558,

16 570-571.  Based on this, potentially the ABC Test would not apply to the Labor Code

17 §226.8 allegations.

18       The proposed $10,000 allocation to PAGA is significant and should be approved.

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

## VI.    CONCLUSION

After taking into account the sharply disputed factual and legal issues involved in this lawsuit, including the settlement releases obtained by Defendant from class members in this case prior to mediation, the risks attending further prosecution, and the substantial benefits to be received pursuant to the compromise and settlement of the lawsuit as set forth in the Settlement Agreement (and detailed supra), Plaintiff and Class Counsel concluded that settlement on the terms set forth herein is in the best interest of Plaintiff and the Class and is fair, reasonable, and adequate.

For the above reasons, final approval of the settlement is appropriate and should be granted by the Court.

Dated: September 9, 2019                  Respectfully Submitted,
                                          **THE MYERS LAW GROUP, A.P.C.**


                                          By:   /s/ Robert M. Kitson
                                                David P. Myers, Esq.
                                                Robert M. Kitson, Esq.
                                                Jason Hatcher, Esq.
                                                Attorneys for Plaintiff Lynn Hodge
                                                and all others similarly situated

NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT